No. 33 July 16, 2026 449

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

TIMOTHY ZANE HEWARD,
*Petitioner on Review.*

(CC 21CR61943) (CA A179016) (SC S072132)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 18, 2026.

Erica L. Herb, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Dan Rayfield, Attorney General, and Paul L. Smith, Solicitor General.

Stacy M. Du Clos, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

BUSHONG, J.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

_____
* Appeal from Linn County Circuit Court, Rachel Kittson-MaQatish, Judge. 341 Or App 381 (2025) (nonprecedential memorandum opinion).

**BUSHONG, J.**

In this criminal case, we are asked to decide whether a trial court erred in allowing a district attorney to amend an indictment without presenting the amendment to a grand jury. Article VII (Amended), section 5(6), of the Oregon Constitution allows a district attorney to amend an indictment with the court's approval without further consideration by a grand jury if the original indictment was "defective in form." The issue on review is whether that provision applies to the amendments in this case.

The original indictment alleged, among other things, that defendant had committed second-degree robbery on two separate occasions by threatening to use physical force while committing theft, but neither count alleged that he had threatened the *immediate* use of physical force, as required by statute to charge defendant with second-degree robbery, ORS 164.405. On the morning of trial, the prosecutor moved to amend the indictment, explaining that the failure to include the word "immediate" in the indictment was a "scrivener's error" and representing that she would have correctly explained the law to the grand jury. The trial court allowed the requested amendments, concluding that the original indictment was "defective in form." The Court of Appeals affirmed, concluding that the trial court was entitled to accept the prosecutor's explanation that the omission in the indictment was a scrivener's error, and that an amendment to correct the error was permissible because it was "'for the express purpose of prosecuting the exact crime that the grand jury had in mind.'" *State v. Heward*, 341 Or App 381, 386 (2025) (nonprecedential memorandum opinion) (quoting *State v. Long*, 320 Or 361, 371-72, 885 P2d 696 (1994)).

We allowed defendant's petition for review and now reverse. Under Article VII (Amended), section 5(6), as we have consistently applied it, an indictment may be defective in form when it is defective in a way that is not essential to the charge. That type of defect may be corrected by a district attorney amendment, but omitting an allegation that *is* essential to the charge is a substantive defect that may not be corrected without consideration by the grand jury. *State v Haji*, 366 Or 384, 462 P3d 1240 (2020); *State v. Pachmayr*,

344 Or 482, 185 P3d 1103 (2008). As we will explain, an indictment that charges a person with robbery based on the person's threatened use of physical force without alleging that the person threatened the *immediate* use of physical force is defective in a way that is essential to the charge. That is a defect in substance, not form, and, therefore, in this case, Article VII (Amended), section 5(6) did not allow the district attorney to correct it by amending the indictment. Thus, the trial court erred in allowing the amendment and, as we will explain, the error was not harmless.

## I.   BACKGROUND

The facts are mostly procedural and are undisputed. We summarize those facts from the trial court record.

Defendant was charged with two counts of second-degree robbery and other offenses after he took merchandise from two stores—a Fred Meyer store and a Walmart store—without paying and threatened to use physical force against the store employees who confronted him. Under ORS 164.405(1)(a), a person commits second-degree robbery if the person "represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon" while committing third-degree robbery, which requires that the person "uses or threatens the *immediate* use of physical force" while committing or attempting to commit theft. ORS 164.395(1) (emphasis added).

On the two counts of second-degree robbery at issue here, the indictment alleged that, on two separate occasions, defendant "unlawfully and knowingly, while in the course of committing or attempting to commit theft, and with the intent of overcoming resistance to defendant's taking of property or retention of the property immediately after the taking, use[d] and threaten[ed] the use of physical force" upon the store employees, and that defendant "represent[ed] by word or conduct that [he] was armed with what purported to be a dangerous or deadly weapon[.]" The indictment did not allege that defendant had threatened the "immediate" use of force during either incident.

On the morning of the first day of trial, the state moved to amend the indictment to add allegations that

defendant had used or threatened the *immediate* use of physical force during the two alleged robberies. The prosecutor stated that she

> "would have explained to [the grand jury] what robbery means and correctly stated the law, which I know to be immediate use of physical force. What they signed, however, did not include that language, and I would submit to the court that it was basically a scrivener's error, which is something that the court can correct by interlineation."

The prosecutor argued that the amendment was permissible without returning to the grand jury. She noted, however, that the same grand jury that had indicted defendant was "still sitting" and would be in the courthouse the next day. She indicated that defendant "could be indicted correctly" as quickly as the next day but wondered whether it would be worth it to delay the trial "for such a minor amendment."

Defendant objected, arguing that the proposed amendment was substantive. The prosecutor responded that if the state had to return to the grand jury to amend the indictment, the state would not present any additional evidence but would be asking the grand jury to add the word "immediate" to the two robbery counts and then sign the amended indictment. The prosecutor further indicated that requiring the state to return to the grand jury on the following day would not be "justice" or "efficiency in the court system" because, "had this been a Wednesday grand jury, [she] would have just done it th[at] morning[.]"

In a colloquy with the court, defense counsel acknowledged that she had received a transcript of the grand jury testimony, but she indicated that the transcript did not include what the prosecutor had said to the grand jury about the robbery charges. The prosecutor responded that the testimony before the grand jury was that "the threats were at the same time that the thefts were occurring," which made them "an immediate threat."[1] Defense counsel disagreed

---

[1] The prosecutor was correct that making a threat at the same time as a theft was occurring would be "an immediate threat," but that is not necessarily the same as threatening "the immediate use of physical force" as required by the statute. For example, if a person confronted by a store employee while committing theft threatened to return to the store in a week and stab the store employee with a knife, the person committing the theft would have made "an immediate threat" but would not have threatened "the immediate use of physical force."

with that characterization of the testimony and indicated that "the issue is whether the grand jury based their decision [to indict] on appropriate evidence." The trial court then ruled, "based on [defense counsel's] argument," and "the evidence and information provided by the DA and the fact that [the grand jury] would only be looking at whether or not to sign the bill and no additional evidence," that it would allow the amendment by interlineation.

At trial, the state relied on evidence that defendant had *threatened* to use physical force in both incidents, not that he had *used* physical force. The store employees testified that, on each occasion, when they attempted to stop defendant, he reached into his pocket or waistband for what they thought might be a weapon and that defendant then stated, "Is this worth dying over?" In addressing the threatened use of force element in closing argument, the prosecutor asked, "What is the threat of immediate physical force? It's the words," specifically, defendant's statement, "'[I]s this worth dying over?'" The prosecutor submitted that threatening the immediate use of physical force "doesn't get much more obvious" than when someone says, "'[I]s this worth dying over?'" The prosecutor mentioned that there was "some force" used in the Walmart incident, but stated that in both incidents, the state's "stronger" argument was based on defendant's threat.[2] In rebuttal closing, the prosecutor focused only on the threats, stating that the reason the loss prevention officers did not pursue defendant "is because he threatened their lives." The prosecutor concluded that, in both incidents, the efforts at loss prevention stopped "when those threats [were] made" and that the store employees did not "go after [defendant] *** because of those threats. That, folks, is a robbery."

The jury ultimately convicted defendant of two counts of second-degree robbery and other charges. Defendant appealed, contending that the trial court had

---

[2] In its brief in this court, the state acknowledged that both robbery charges were based on evidence that defendant had *threatened* to use force on the store loss prevention employees, not that defendant had *used* force, even though there was evidence in the record that defendant and a Walmart employee had struggled over a backpack, with each person "pulling with as much force as [they] could."

erred in allowing the amendment to the indictment on the two robbery charges.[3]

As noted, the Court of Appeals affirmed the convictions, concluding that the amendment was not substantive. We allowed defendant's petition for review to address whether the original indictment was "defective in form" within the meaning of Article VII (Amended), section 5(6), of the Oregon Constitution.

## II.   ANALYSIS

We review a trial court's ruling that an indictment is "defective in form"—and thus may be amended by the district attorney with the court's approval, without returning to the grand jury—for legal error. *See State v. Wimber*, 315 Or 103, 113-15, 843 P2d 424 (1992) (applying without stating standard). Before addressing whether the original indictment in this case was "defective in form," it is helpful to summarize the role of grand jury indictments, the history of the constitutional grand jury provision, and our prior cases analyzing when an indictment is considered "defective in form" and thus subject to amendment without further consideration by the grand jury. We begin with that overview.

### A.   *Role of a Grand Jury Indictment*

A grand jury functions "as an accusatory body [that] serves a crucial role in protecting individual liberties." *State v. Burleson*, 342 Or 697, 703, 160 P3d 624 (2007); *see also State v. Gortmaker*, 295 Or 505, 510-14, 668 P2d 354 (1983) (summarizing historical roots of the grand jury and Oregon's grand jury system). A grand jury "serves as a brake on the state's potential abuse of the accusatory process." *Burleson*, 342 Or at 703. The grand jury is "an institution in which a group of ordinary citizens must approve of the initiation of the state power to accuse citizens of major crimes." *Id.* A grand jury indictment is, in effect, an agreement between "the executive branch [of government], in its prosecutorial function, and the judicial branch, in the form of a grand jury *** before a criminal process may go forward." *Id.*

---

[3] Defendant raised other assignments of error in the Court of Appeals, which that court rejected. The only issue before us on review concerns the amendments to the indictment.

Statutes "define the role and \*\*\* activities of the grand jury and its relationship to the prosecutor." *Id.* at 704. "District attorneys—as executive agents—do not have statutory authority to unilaterally control, limit, or dictate the grand jury's inquiry[,]" but they "do have an important role" in presenting evidence, examining witnesses, and submitting indictments when they have "'good reason to believe that a crime has been committed which is triable within the county.'" *State v. Wall*, 374 Or 407, 414-15, 578 P3d 1215 (2025) (quoting ORS 132.330). In addition, ORS 132.550(7) specifies that an indictment must substantially contain "[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended[.]" We have indicated that "the objects of an indictment" under that statute are

"'(1)  to inform the defendant of the nature of the crime with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the defendant to avail himself of his conviction or acquittal thereof if he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction.'"

*Antoine v. Taylor*, 368 Or 760, 772, 499 P3d 48 (2021) (quoting *State v. Cohen*, 289 Or 525, 529, 614 P2d 1156 (1980)). We have described the "constitutional purposes of requiring an indictment by grand jury" in similar terms. *Wimber*, 315 Or at 115.[4]

B.   *History of Constitutional Grand Jury Provision*

As adopted in 1857, Article VII (Original), section 18, of the Oregon Constitution provided in part that seven

---

[4] In *Wimber*, we stated that "[t]he constitutional purposes of requiring an indictment by grand jury are threefold:

"'(1) to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction.'"

315 Or at 115 (quoting *State v. Smith*, 182 Or 497, 500-01, 188 P2d 998 (1948)).

of "the most competent of the permanent citizens of the county" shall be "chosen by lot as grand [j]urors, [f]ive of whom must concur to find an indictment."[5] That provision "did not specify what the grand jury had to find to indict a defendant[,]" but it did authorize the legislature "to modify or abolish grand juries." *State v. Reinke*, 354 Or 98, 107, 309 P3d 1059 (2013). That provision was amended through an initiative petition in 1908 to add the following:

> "No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon indictment found by a grand jury. *Provided, however, that any district attorney may file an amended indictment whenever an indictment has, by a ruling of the court, been held to be defective in form.*"

Article VII (Original), section 18 (as amended by initiative petition adopted by the people June 1, 1908) (emphasis added). The 1908 amendment thus made two substantive changes to the original constitutional provision: (1) it expressly required a grand jury indictment in order to charge a person with a crime or a misdemeanor, *see Reinke*, 354 Or at 108; and (2) it authorized, for the first time, a district attorney to file an amended indictment with the court's approval if the court determined that the original indictment was "defective in form." *See Haji*, 366 Or at 402 (summarizing that history).

Between 1908 and 1973, the people amended Article VII three more times, but the provision requiring a grand jury indictment for a "crime or misdemeanor" remained unchanged, as did the provision allowing amendments to indictments that are "defective in form." *See Reinke*, 354 Or at 108-09 (summarizing that history).

---

[5] As originally adopted by the people, Article VII (Original), section 18, provided:

> "The Legislative Assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the Court, seven shall be chosen by lot as grand Jurors, Five of whom must concur to find an indictment: But the Legislative Assembly may modify or abolish grand Juries."

Or Const, Art VII (Original), § 18 (1857).

The people enacted the current version of Article VII (Amended), section 5, in 1974 upon legislative referral to Oregon voters. *See* SJR 1 (1973) (referring the measure); Or Laws 1975, p 6 (recording passage at the November 1974 election); *Haji*, 366 Or at 399 (summarizing history). Article VII (Amended), section 5, of the Oregon Constitution now provides, in part:

> "(3)   Except as provided in subsections (4) and (5) of this section,[6] a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.
>
> "* * * * *
>
> "(6)   An information shall be substantially in the form provided by law for an indictment. *The district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form.*"

(Emphasis added.) Although the current version of Article VII (Amended), section 5, was adopted in 1974, it is substantially the same as Article VII (Original), section 18, after it was amended in 1908 to permit a district attorney to amend indictments held to be defective in form. *See Pachmayr*, 344 Or at 486 (so stating).

The 1974 and 1908 versions of the constitutional grand jury requirement do not define the term "defective in form," but Oregon statutes that were in place when the 1908 version was enacted used substantially similar wording. *Pachmayr*, 344 Or at 486 (citing The Codes and Statutes of Oregon, title XVIII, ch VIII, §§ 1314, 1315 (Bellinger & Cotton 1901)). As we explained in *Pachmayr*, those statutes "drew a distinction between the substantive aspects of an indictment that were required to render the indictment sufficient and the formal aspects of an indictment[.]" *Id.* at 487-88. Under those statutes, "defects in the formal aspects of an indictment were defects that did not prejudice the defendant

---

[6] Subsection (4) authorizes a district attorney to charge a person with a felony by information rather than by indictment if the person knowingly waives indictment. Or Const, Art VII (Amended), § 5(4). Subsection (5) authorizes a district attorney to charge a person with a felony by information upon a showing of probable cause at a preliminary hearing. *Id.* § 5(5).

*or affect the sufficiency of the indictment." Id.* at 488 (emphasis added).

The 1891 edition of *Black's Law Dictionary*, which was in general use in 1908, "recognized the same distinction" between "form" and "substance," *id.*, as did the 1897 edition of *Bouvier's Law Dictionary*, as we explained in *Haji*, 366 Or at 404 (citing and discussing 1 *Bouvier's Law Dictionary* 528, 831 (1897)).

C.  *Case Law on Indictments "Defective in Form"*

Our case law since the adoption of the 1908 amendment addressed the distinction between indictments that are "defective in form" and those that are defective in substance. As we will explain, we have consistently determined that indictments that do not contain allegations essential to the crime charged, as defined by statute, are defective in substance—not defective in form—and that such a defect may not be corrected by a district attorney amendment.

The first case to consider the district attorney's authority to amend indictments after the 1908 constitutional amendment—*State v. Moyer*, 76 Or 396, 398, 149 P 84 (1915)—involved an indictment that alleged that the defendant had set fire to a stable. That indictment was defective because it did not allege that the stable was owned by "another person," as required by the governing statute. *Id.* (citing Lord's Oregon Laws, title XIX, ch. III, § 1932 (1910)). After sustaining the defendant's demurrer to the indictment, the trial court allowed the district attorney to amend the indictment without returning to the grand jury, and the defendant was convicted. *Id.* at 396-97. This court reversed, concluding that the indictment could not be amended without returning to the grand jury, because it was not "defective in form." The court noted "a well-recognized distinction between matters *** of form and matters that go to the substance of the indictment[.]" *Id.* at 399. Matters of form, the court explained, are matters "which are not essential to the charge and merely clerical errors, such as where the defendant cannot be misled to his prejudice by the amendment[.]" *Id.* By contrast, an indictment has a substantive defect "where there is an omission or misstatement which

prevents the indictment from showing on its face that an offense has been committed[.]" *Id.*[7]

In the years since *Moyer* was decided, this court has consistently applied that distinction between defects in form and defects in substance. *See Pachmayr*, 344 Or at 489 ("Since *Moyer*, the court has continued to consider the allegations of an indictment that are essential to the charge to be matters of substance").

In *Wimber*, 315 Or 103, we adopted a framework for assessing whether an amendment to an indictment that did not contain a defect that was apparent from the face of the indictment was a substantive amendment.[8] Under those circumstances, we explained, "[c]onsistent with the holding" in *Moyer*, the analysis proceeds by asking the following questions:

"(1)   Did the amendment alter the essential nature of the indictment against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime? * * *

"(2)   Did the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy? * * *

"(3)   Was the amendment itself sufficiently definite and certain? * * *

---

[7] The *Moyer* court found support for that distinction in volume 1 of the *Encyclopedia of Pleading and Practice* (Encyclopedia), which stated: "'Matter that is essential to be set forth or to show that an offense has been committed is [a] matter of substance, and cannot be amended without the concurrence of the grand jury.'" *Id.* at 400 (quoting Encyclopedia at 690). The court explained the reason for that rule as follows: "'Material allegations of the indictment must be proved. Matter which is not charged in the indictment need not be proved or considered.'" *Id.* (quoting Encyclopedia at 445). Thus, the court concluded that "[m]atters that are necessary to be proved as alleged are material to the indictment." *Id.*

[8] The twelve-count indictment in *Wimber* charged the defendant with sexual offenses that allegedly occurred during a six-year period that went beyond the applicable statute of limitations. The parties and the trial court recognized that defendant could not be convicted based on evidence of conduct outside the limitations period, so the trial court amended the indictment to narrow the date range. This court concluded that that "was a permissible amendment as to a defect in the form of the indictment" because "[n]o new or different theory, element, or crime was added." 315 Or at 115. "To the contrary," we explained, "the indictment returned by the grand jury was narrowed." *Id.*

"[And, if] the amendment deleted allegations, we ask one additional question[:]

"(4)   Did the remaining allegations in the indictment state the essential elements of the offenses? ***"

*Id.* at 114-15.

Our decision in *Pachmayr* confirmed that the *Wimber* analysis applies only when the defect is not "apparent from the face of the indictment," that is, where an indictment "appear[ed] to be both sufficient and accurate" but where "extrinsic facts" showed it to be insufficient or inaccurate. 344 Or at 489.[9] We explained that *Wimber* had posed four questions that a court should ask in that context, phrased "as questions about the nature of the proposed amendment and not as questions about the indictment itself." *Id.* at 490. That focus was "sensible," we explained, when we were assessing a defect in an indictment that "may not be apparent on the face of that document." *Id.* In that situation, a court "must examine the proposed amendment and its effect on the indictment to understand the nature of the defect it seeks to remedy." *Id.*

*Pachmayr* also involved a defect that was not apparent from the face of the indictment. *Id.* The indictment charged the defendant with two counts of second-degree assault by means of a "dangerous weapon" (Counts 1 and 3), and one count of second-degree assault by means of a "deadly weapon" (Count 2), all arising out of an incident in which the defendant drove over a highway median and collided with another car. For all three counts, the state alleged that the "weapon" was an automobile. The state acknowledged at the close of its case-in-chief that it had not adduced evidence that the car was a *deadly* weapon as stated in Count 2 of the indictment, but the state moved to amend that count

---

[9] As an example of a defect that was not apparent from the face of the indictment, we cited *State v. Woodson*, 315 Or 314, 845 P2d 203 (1993). *Pachmayr*, 344 Or at 489. The indictment in *Woodson* charged the defendant with rape, but the state's evidence at trial only went to an attempted rape. Under those circumstances, we explained, the indictment "was sufficient on its face, but defective because the allegations in the original indictment did not match the proof at trial." *Id.* The constitution permitted the district attorney to amend the indictment in the circumstances presented in *Woodson*, we explained, "because the crime of rape includes the crime of attempted rape." *Id.*

to change "deadly" to "dangerous."[10] The trial court allowed the amendment, and a jury convicted the defendant on all three counts. *Id.* at 485.

On appeal, the defendant contended that the trial court erred in allowing the amendment to Count 2, because the definition of a "deadly" weapon focuses on its "design" while the definition of a "dangerous" weapon focuses on how it was used. We disagreed and affirmed the conviction. We noted that, even though Count 2 in the original indictment "did not use the phrase 'dangerous weapon,' it contained all of the allegations that were necessary to make out a charge under that theory" because it alleged that the defendant used the car in a way that made it "capable of causing death or serious physical injury"—the definition of a "dangerous weapon" under ORS 161.015(1). 344 Or at 492. We observed that Count 2 "was defective" because it included an "additional allegation"—that the car was *designed* to cause death or serious physical injury. *Id.* at 493. That "additional allegation," we explained, "although inaccurate, did not render the indictment insufficient" to allege second-degree assault, and "[i]ncluding that extra allegation was not, therefore, a defect of substance." *Id.* We concluded:

> "Because the original indictment alleged that defendant used the car under circumstances that rendered it capable of causing injury, *it already charged the crime of assault with a dangerous weapon.* The amended indictment did not require defendant to defend against any allegations that were not already included in the original indictment."

*Id.* (emphasis added).

Finally, we were "satisfied" in *Pachmayr* that "the grand jury, not the prosecutor, determined the charge to be brought and found the facts on which the charge was based." *Id.* at 495. We were not required in that case to "make assumptions" from Counts 1 and 3—which, as noted, had charged the defendant with assault with a *dangerous* weapon—to determine "what the grand jury 'actually' intended to charge" in Count 2—which had charged the

---

[10] A person can commit second-degree assault by intentionally or knowingly causing physical injury to another "by means of a deadly or dangerous weapon[.]" ORS 163.175(1)(b).

defendant with assault with a *deadly* weapon. *Id.* That was because "we kn[e]w—without speculating—that the grand jury, by signing the indictment on Count 2, certified that it found sufficient evidence to charge [the] defendant with driving a car—an instrument capable of causing death or serious injury—recklessly, under circumstances manifesting extreme indifference to the value of human life." *Id.* (internal quotation marks omitted).

Our most recent case on district attorney amendments to an indictment, *State v Haji*, 366 Or 384, presented a different question: whether a district attorney may add allegations to an indictment specifying the statutory basis for joinder of multiple offenses without resubmitting the case to the grand jury. We held that "neither the statute permitting joinder of multiple offenses in a single indictment nor Article VII (Amended), section 5(6), of the Oregon Constitution" precluded a district attorney from amending an indictment with approval of the trial court to add allegations specifying the statutory basis for joinder of multiple offenses. *Id.* at 386. In addressing the constitutional issue, we applied the analysis that we had adopted in *Pachmayr* in determining whether an indictment that did not specify the statutory basis for joining multiple offenses was "defective in form" only. *Id.* at 407-08. We concluded that the defect in the indictment was "one of form" that could be corrected by the district attorney, because the amendment "added only statutory bases for joinder of multiple crimes * * * not additional historical facts essential to show that a crime had been committed." *Id.* at 420.

With those principles in mind, we turn to how they apply in this case.

D.   *Application to This Case*

The original indictment alleged that, on two separate occasions, defendant "unlawfully and knowingly, while in the course of committing or attempting to commit theft, and with the intent of overcoming resistance to defendant's taking of property or retention of the property immediately after the taking, use[d] and threaten[ed] the use of physical force" upon the store employees, and "represent[ed] by word

or conduct that defendant was armed with what purported to be a dangerous or deadly weapon[.]" Thus, the indictment charged one valid theory of robbery—the *use* of physical force—and one invalid theory of robbery—the *threatened use* of physical force—for each incident. The "threatened use" theory of robbery is invalid because threatening the use of physical force is not a robbery under ORS 164.405(1) and ORS 164.395(1) unless the defendant threatened the *immediate* use of physical force.[11]

The defect in the indictment regarding the threatened use of force theory of robbery is apparent from the face of the indictment itself. Indicting defendant based on his threatened use of force while committing a theft does not allege the crime of robbery as defined in the governing statutes. It is not necessary to examine "extrinsic facts" to demonstrate the insufficiency or inaccuracy of the indictment. *Pachmayr*, *Woodson*, and *Wimber* all involved situations where the defect in the indictment "did not appear on the face of the indictment." *Pachmayr*, 344 Or at 489.[12] Under those circumstances, the court must examine extrinsic facts and consider the *Wimber* questions about the nature of the proposed amendment and its effect on the indictment to understand the nature of the defect. And we concluded that the original indictments in all three cases were "defective in form" because they *already included* the facts that were "essential to the charge."

---

[11] The indictment used the word "immediately" but in a different place, alleging that defendant, while committing or attempting to commit theft, "and with the intent of overcoming resistance to [his] taking of property or retention of the property *immediately* after the taking," used or threatened the use of physical force. In that context, "immediately" refers to his retention of the property after taking it, not to his use or threatened use of force. *See State v. Webb*, 324 Or 380, 386, 927 P2d 79 (1996) (under the "long-recognized grammatical principle" of the last antecedent, a phrase "usually is construed to apply to the provision or clause immediately preceding it"). Where the word "immediately" is placed is important, because, as noted above, 375 Or at 453 n1 (slip op at 4:13-16 n 1), immediately threatening the use of force is different from threatening the immediate use of force.

[12] That was also true in *Long*, where the district attorney was permitted to amend an indictment that "was sufficient to charge the crime in question" to correct the date of the offense. 320 Or at 371. Similarly, the indictment in *Haji* was sufficient on its face to state the essential allegations to the charges at issue; the district attorney then "obtained leave from the trial court to amend the indictment by adding allegations specifying the statutory basis for joinder, without adding factual allegations about the crimes." 366 Or at 386.

In *Wimber*, for example, the facts essential to the sexual offenses charged were already included in the original indictment; the amendment merely "narrowed" the date range in which the offenses were alleged to have occurred. 315 Or at 115. In *Woodson*, the facts essential to a charge of attempted rape were already included within the indictment charging the defendant with rape because attempted rape "is a lesser included offense of rape." 315 Or at 319. And in *Pachmayr*, "although the original indictment did not use the phrase 'dangerous weapon,' it contained all of the allegations that were necessary to make out a charge under that theory" because "driving a car—an instrument capable of causing death or serious injury—recklessly, 'under circumstances manifesting extreme indifference to the value of human life,'" alleged that the car was used as a dangerous weapon. 344 Or at 492.

This case is different. This case involves the failure to include in the original indictment an allegation—that the defendant had threatened the immediate use of force—that is essential to the robbery charges as defined by statute for the prosecution theory that the state presented at trial. By prohibiting the threat of *immediate* use of physical force, the legislature distinguished robbery from theft by extortion, as we explained in *State v. Williams*, 374 Or 648, 676-77, 582 P3d 637 (2025).[13] Thus, threatening the *immediate* use of physical force was essential to the robbery charge, and, as we noted in *Pachmayr*, this court has consistently treated "allegations * * * that are essential to the charge to be matters of substance." 344 Or at 489.

We addressed that type of defect in *Moyer*, 76 Or 396, which is controlling here. The missing allegation in *Moyer*— that the stable burned by the defendant was the property

---

[13] A person commits theft by extortion if they compel or induce another person to deliver property by instilling a fear that, if the property is not delivered, "the actor or another *will in the future* * * * cause physical injury to some person." 374 Or at 677 (citing ORS 164.075(1)(a) (emphasis added)). In *Williams*, we noted that the official commentary of the Criminal Law Revision Commission, which drafted the revised Criminal Code, "makes clear that, when accomplished through a threat to use physical force, robbery is distinguishable from theft by extortion only because it requires an 'immediate' rather than a 'future' threat[.]" 374 Or at 676-77 (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 150, 154-55 (July 1970)).

of another person—was "an omission \* \* \* which prevent[ed] the indictment from showing on its face that an offense ha[d] been committed, or to charge the particular offense[.]" *Id.* at 399. Similarly, the missing allegation here—that defendant had threatened the *immediate* use of physical force—was an omission that prevented the indictment "from showing on its face" the historical facts required to "charge the particular offense" of robbery based on a threatened use of physical force. Thus, to the extent that the state sought to pursue a "threatened use" of force theory of robbery at trial, that allegation was essential to each robbery charge as a matter of substance. Because the defect in the indictment was a matter of substance, and not form, the trial court erred in allowing the prosecutor to amend the indictment without presenting the amendment to the grand jury.

The state argues that the amendment here is an amendment of form because it "does not change the facts found by the grand jury." We disagree. The "facts found by the grand jury" are the facts set forth in the indictment. Even if we presume that the facts *presented* to the grand jury suggested that defendant had threatened the immediate use of force, we cannot tell, without speculating, that the grand jury *found* that defendant had threatened the immediate use of force. *See Haji*, 366 Or at 409 (stating that "it is essential for a grand jury indictment to include the facts supporting the elements of the crime"); *Reinke*, 354 Or at 112 (holding that Article VII (Amended), section 5, "requires the grand jury to find and plead only the elements of the crime as defined by the legislature"). Holding otherwise would diminish the power of the grand jury. The grand jury is not obligated to find that the state's evidence supports each element. Indeed, as we have made clear, "the grand jury is free to investigate crimes on its own[]" and is "empowered to direct the district attorney to prepare 'indictments or presentments[.]'" *Wall*, 374 Or at 415 (quoting ORS 132.340).[14]

---

[14] The state's argument also focuses on the *amendment* and not on the original indictment. As we explained in *Pachmayr*, focusing on the amendment is "sensible" where the defect in the indictment is *not* apparent on the face of the indictment and becomes apparent only by examining extrinsic facts. But where the indictment fails to include an essential element of the charge, the defect *is* apparent on the face of the indictment, and there is no reason to engage in the *Wimber* analysis about the nature of the amendment.

The state also argues that the trial court was entitled to accept the prosecutor's representation that the failure to allege that defendant had threatened the "immediate" use of force was a scrivener's error. That argument misses the point. The *reason* for the error is not the issue. The issue is whether the original indictment was "defective in form" within the meaning of Article VII (Amended), section 5, because it did not include an allegation that was essential to the robbery charges as defined by the governing statute. As we have explained, the failure to include an allegation that is essential to the charge of robbery is a substantive defect, not a defect in form, regardless of the reason for the defect, because the indictment specifies the historical facts which the grand jury found to be sufficient to allow the state to proceed with the criminal charges, and that the state must prove at trial to convict.[15]

Finally, the state contends that, even if the defect in the indictment was substantive, the error in allowing the prosecutor to amend the indictment was harmless, requiring this court to affirm the convictions under Article VII (Amended), section 3, of the Oregon Constitution.[16] We disagree. Oregon's "constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111(2003). The error here likely "affected the verdict" because it allowed the state to argue

---

[15] The term "scrivener's error" is frequently used by litigants, but that term has no legal significance in this context, because a "scrivener's error" is not the same thing as a defect in form. A "scrivener" is "a writer; esp., a professional drafter of contracts or other documents." *Black's Law Dictionary* 1349 (7th ed 1999). A "scrivener's error" is "an error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." *Id*. By contrast, an indictment can be defective in form only if it includes all the allegations that are essential to the charge, despite the defect. A failure to include in an indictment an allegation that is essential to the charge is a defect in substance, not form, even if the error is the result of a mistake—and thus fits the definition of a "scrivener's error." We used the term "scrivener's error" in *Woodson*, 315 Or at 316-17, in describing the parties' arguments, not to endorse its use in assessing whether an indictment is defective in form or in substance.

[16] Article VII (Amended), section 3, provides, in part:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgement of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

its strongest theory of robbery to the jury—that defendant had threatened the immediate use of physical force while committing two separate thefts. Without the amendment, the state would not have been able to argue its threatened-use-of-force theory to the jury, and therefore we cannot say that there is little likelihood that the amendment affected the jury's verdict.[17]

In summary, an allegation that defendant threatened the *immediate* use of physical force was essential to the robbery charges that the state presented at trial. The omission of that allegation made the indictment substantively defective, not defective in form. Allowing the prosecutor to amend the indictment without returning to the grand jury violated Article VII (Amended), section 5, and the error was not harmless.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

---

[17] Because there was no evidence that defendant had used force during the Fred Meyer incident, as the state concedes, that count would not have gone to the jury at all without the amendment. Although there was some evidence that defendant had used force when he struggled with a Walmart employee over a backpack, defendant's *threatened* use of force was the state's primary theory of robbery on both incidents.